1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

BURNETT WATKINS,

Plaintiff,

v.

CITIGROUP RETIREMENT SYSTEMS,

Defendant.

Case No. 15-cv-731 DMS (NLS)

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

[ECF 14]

17    Pending before the Court is Defendant Citigroup Retirement Systems' motion

18 to dismiss Plaintiff's Complaint brought pursuant to the Employee Retirement

19 Income Security Act of 1974 ("ERISA"). Plaintiff Burnett Watkins, proceeding *pro*

20 *se*, filed an opposition. ECF 16 ("Plaintiff's Objection to Defendant's Motion to

21 Dismiss"). Defendant filed a reply. The matter, having been fully briefed and

22 considered, the Court **DENIES** the motion to dismiss for the reasons set forth below.

23 **I.**

24 **BACKGROUND**

25    In August of 1994, Plaintiff and Victoria Watkins dissolved their marriage.

26 *In re Marriage of Watkins*, No. DR 92-13940 (Ariz. Sup. Ct.), ECF 14-2. In the

27 Dissolution Decree, the Court ordered that Victoria Watkins be granted a half

28 interest in Plaintiff's Citigroup pension benefits plan ("Plan"), as apportioned in a

1   Qualified Domestic Relations Order ("QDRO") issued on November 1, 1999. *Id.* at
2   6. The QDRO provided that the interest in Plaintiff's pension would be granted to
3   Ms. Watkins as a "straight life annuity". QDRO 2(a), ECF 14-3.

4       After Ms. Watkins' death on August 5, 2011, Plaintiff notified Defendant of
5   her passing "so that [Defendant] could reallocate those funds to [Plaintiff's] account
6   effective the day of her death." *See* Compl., App. 3, ECF 1. Defendant responded
7   that the QDRO did not contain provisions "to allow for payments to return to you
8   upon the event that [Ms. Watkins] should pre-decease you." *Id.* at 4. On August 20,
9   2013, Plaintiff made a "final request" to provide the benefit, after which he stated he
10  would "proceed to file a MOTION TO COMPEL with the Federal Courts." *Id.,*
11  App. 8. On December 18, 2013, Defendant advised Plaintiff that the QDRO was a
12  binding court order that permanently created a separate half interest payable to
13  Watkins. *Id.,* App. 12. Defendant stated that this interest, because it was a single
14  life annuity, extinguished at Ms. Watkins' death. *Id.* Defendant further advised
15  Plaintiff to use Defendant's formal claims and appeals procedure. *Id.* Instead of
16  availing himself of that procedure, Plaintiff filed the present action on April 3, 2015.

17                              **II.**

18                          **ANALYSIS**

19      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
20  Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R.
21  Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court
22  must accept all factual allegations pleaded in the complaint as true and must construe
23  them and draw all reasonable inferences from them in favor of the nonmoving party.
24  *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a
25  Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations,
26  rather, it must plead "enough facts to state a claim to relief that is plausible on its
27  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial
28  plausibility when the plaintiff pleads factual content that allows the court to draw

1   the reasonable inference that the defendant is liable for the misconduct alleged."
2   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

3           Generally, courts may not consider material outside the complaint when ruling
4   on a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d
5   1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the
6   complaint whose authenticity is not questioned by parties may be considered.  *Fecht*
7   *v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other
8   grounds).  Moreover, the court may consider the full text of those documents, even
9   when the complaint quotes only selected portions.  *Id.*  It may also consider material
10  properly subject to judicial notice without converting the motion into one for
11  summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Such is
12  the case here.

13          The Court takes judicial notice of the above-referenced court orders, the
14  dissolution and the QDRO, as both are relevant matters of public record. The Court
15  also takes judicial notice of Plaintiff's Pension Plan, attached as Exhibit "D" to
16  Defendant's motion. ECF 14-5. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th
17  Cir. 2003) (holding judicial notice of ERISA plan documents proper where plan is
18  referenced in complaint and authenticity is undisputed).

19      **A. <u>CONTRACTUAL LIMITATIONS BAR.</u>**

20          Initially, Defendant invokes the Plan's two-year time limitations clause to
21  seek dismissal of this lawsuit.  The Plan states:

22      *A claimant must file any lawsuit* or similar enforcement proceeding,
        commenced in any forum whatsoever, with respect to the Plan within
23      12 consecutive months after the date of receiving a final adverse
        determination on review, or if earlier, *within two years from the date on*
24      *which the claimant was aware, or should have been aware, of the claim*
        *at issue in the proceeding. The two-year limitation shall be increased*
25      *by any time a claim or appeal on the issue is under consideration by*
        *the appropriate fiduciary.*
26

27

28  Plan 3.09(f), ECF 14-5 (emphasis added).

The Complaint reveals that Plaintiff had knowledge of the claim no later than April 2012.  *See* Compl., App. 4 (Citi Corporate Benefits letter dated April 11, 2012, stating "we will have to deny your request for reverting payments to your account from your former spouse's account.")  Defendant relies on the April 11, 2012 letter as the event triggering the contractual limitations bar, and based thereon, argues the Complaint is time barred as it was filed more than two years after Plaintiff received the letter.

Plaintiff, however, attached to his Complaint a series of back-and-forth letters between Plaintiff and Defendant regarding his claim, denials of the claim, and repeated requests for reconsideration to which Defendant responded.  *Id.*, App. 3-12 (letters dated August 27, 2011, through December 18, 2013).  For example, on September 30, 2013, Plaintiff wrote Defendant, stating: "I am confident that after you re-review the information relative to my retirement account you will apply the appropriate remedy and re-instate my … proper amount of my retirement benefits. Please [a]dvise soonest." *Id.*, App. 10.  Defendant responded on December 18, 2013, and re-informed Plaintiff of the basis of its denial of the claim.  *Id.*, App. 12.  Defendant also provided in the letter a more detailed explanation of the basis of its denial and concluded by advising Plaintiff of the "formal claims and appeals procedure[.] … To file a claim you *must* use the enclosed form as we may not treat your prior letters as a formal claim." *Id.* (original emphasis).

Plaintiff elected not to pursue the formal claims and appeals process.  Plaintiff states he "did not file for an appeal to the company that had already denied his rights on numerous occasions as outlined by Plaintiff.  It is clear that by appealing to them about a right that I have is fundamentally flawed thinking.  I reject this position as undefendable." Pl.'s Obj. to Mot. to Dismiss, at 4.  Instead, Plaintiff filed this lawsuit on April 3, 2015, approximately 15 months after receiving Defendant's final letter.

As noted, Defendant relies on the Plan's two year contractual limitations period to argue that Plaintiff's lawsuit is time barred because it was filed nearly three

years after he received the initial denial of his claim on April 11, 2012.[1]  Defendant points out that an ERISA plan may be contractually limited to a shorter timeframe to file suit than provided for by ERISA,[2] as long as that limitation is reasonable. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013).  However, even assuming the two year limitations period provided by the Plan is reasonable and applicable, it does not apply under the circumstances here.

While the Complaint makes clear that Plaintiff had actual knowledge of the initial denial of his claim no later than April 11, 2012, the record also reveals the denial was debated for over 19 months—from April 11, 2012 to December 18, 2013. Defendant invites the Court to interpret the contractual limitations period to be triggered when Plaintiff became aware of the *existence* of the claim, *i.e.,* no later than April 11, 2012, when the claim was initially denied.  In doing so, however, Defendant ignores the very next sentence following the two-year provision: "The two-year limitation shall be increased by any time a *claim or appeal* on the issue is *under consideration* by the appropriate fiduciary."  This language applies to a claim or an appeal, or both, and clearly indicates that resolution (not awareness) of the claim is the triggering event.  Reading that language, a plan participant could well conclude that the limitations period is not triggered while the claim—formal or informal—is "under consideration."   Here, the claim was no longer under consideration (at least at an informal level) as of December 18, 2013, when Plaintiff was expressly advised that his claim was denied and that he could pursue his claim through a "formal" claims and appeals procedures.  Because Defendant treated the December 18 letter as the triggering event to pursue its formal procedures (*i.e.,* administrative remedies), it would be incongruous to interpret the same provision—

---

[1]  Defendant does not argue the 12 months contractual limitations period applies, apparently because there was not a final adverse determination following review.

[2]  Generally, a four year statute of limitations applies for contract disputes to ERISA benefits claims arising in California.  *Withrow v. Halsey,* 655 F.3d 1022, 1036 (9th Cir. 2011).

as Defendant suggests—to require Plaintiff to file his lawsuit within two years of becoming aware of the *initial* claim denial.  The Court declines to find the Complaint time barred under these circumstances.  The Complaint, having been filed within two years of December 18, 2013, is timely.

**B. <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>.**

Defendant next argues the Complaint should be dismissed because Plaintiff failed to exhaust available administrative remedies, citing *Vaught v. Scottsdale Healthcare Corp. Health Plan,* 546 F.3d 620, 626 (9th Cir. 2008) ("[W]e have consistently held that before bringing suit … an ERISA plaintiff claiming a denial of benefits must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.") (Citation omitted.)  *Vaught* cautions, however, that there are "recognized exceptions to our prudential exhaustion requirement[,]" including when resort to administrative remedies would be futile.  *Id.* (citations omitted).  A court's refusal to retain jurisdiction on such occasions may constitute an abuse of discretion.  *Id.*

Certainly, pursuit of available administrative remedies is to be strongly encouraged.  On the present record, however, the Court declines to dismiss the case for failure to exhaust such remedies.  The parties vetted the claim for many months.  Plaintiff is nothing if not persistent—as the record clearly demonstrates.  He threatened to bring legal action if Defendant did not reconsider its position, and Defendant re-stated its position in response to Plaintiff's persistent inquiries on April 11, 2012, October 9, 2012, September 16, 2013, and December 18, 2013.  *See* Compl., App. 12.  Under these circumstances, requiring Plaintiff to pursue formal remedies with Defendant would be futile.[3]

---

[3] Plaintiff argues in his Opposition: "Defendant never provided a claims form to appeal Citi-Corps [sic] denial of my pension benefits.  Further, I should not have to appeal to Citi-Bank about a 'RIGHT' that I possess.  My position is clarified most eloquently by the Appeals Court ruling in favor of my position.  Citi-Corp should know ERISA law and to appeal to them to enforce a right they have denied is unethical and immoral."  *See* Pl.'s Obj. to Mot. to Dismiss, at 4.

**III.**

**CONCLUSION**

For these reasons, the Court **DENIES** the motion to dismiss.  The Court declines to address at this stage Defendant's merits-based argument (*i.e.,* that Defendant correctly determined that the QDRO conveyed a separate interest to Ms. Watkins via a single life annuity and not a shared interest).  Defendant may pursue that argument on a more developed record through a Rule 56 motion.

Defendant shall answer the Complaint within 20 days of this Order.  The parties shall contact the Magistrate Judge and schedule an ENE Conference to occur within 30 days of this Order, at which time all dates will be set, including a trial date within 12 months of the ENE Conference.

**IT IS SO ORDERED.**

Dated:  December 30, 2015

The Honorable Dana M. Sabraw
United States District Court Judge